UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ROBERT JONES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )  Cause No. 1:10-cv-696-WTL-DML |
| | ) |
| C&D TECHNOLOGIES, INC., | ) |
| | ) |
| Defendant. | ) |

**ENTRY ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

This cause is before the Court on the parties' cross-motions for summary judgment. The motions are fully briefed, and the Court, being duly advised, **GRANTS** the Defendant's motion and **DENIES** the Plaintiff's motion for the reasons and to the extent set forth below.

**I. STANDARD**

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor. *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) ("We view the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Id.* Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court

is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

The fact that the parties have filed cross-motions for summary judgment does not alter the standard set forth in Federal Rule of Civil Procedure 56. When evaluating each side's motion, the Court simply "construe[s] all inferences in favor of the party against whom the motion under consideration is made." *Metro Life. Ins. Co. V. Johnson*, 297 F.3d 558, 561-62 (7th Cir. 2002) (quoting *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998)).

## II. FACTUAL BACKGROUND

Plaintiff Robert Jones began working at Defendant C&D Technologies in June 2000 as a machine operator. Jones has suffered from leg pain since 1986, and he requires periodic visits to his doctor and occasional tests to manage his condition.

C&D has an attendance policy that assesses points against an employee for being tardy or absent from his shift, as well as for failing to report his absence in advance. Specifically,

> [a] "point charged" is a "failure to report for anything less than the entire scheduled workday." Employees can receive an additional one-half point for every absence exceeding thirty minutes and occurring without notification prior to the start of the employee's shift. The policy also notes that absences greater than thirty minutes but less than four hours result in one-half point charged.

Def.'s Br. in Supp. of its Summ. J. Mot. at 2. The accrual of one point in a four-month period results in a written warning; the accrual of two points in a four-month period results in another written warning; and the accrual of three points in a four-month period results in termination. C&D does not, however, assess points for absences taken in accordance with the Family and Medical Leave Act.

As of September 16, 2009, Jones had accrued 2.5 attendance points in the preceding four-month period and was thus one-half point away from termination.

In September and October 2009, Jones visited his doctor and underwent medical testing. Pursuant to the FMLA and C&D's policy, Jones's doctor, Dr. Kathryn Lubak, faxed an FMLA certification to C&D on September 25 (the "September certification"), indicating that Jones had suffered from leg pain since 1986. The September certification indicated that while Jones was not presently incapacitated, Jones would suffer from two to three periods of incapacity a year. Management of his condition would require occasional tests two to three times per year and office visits once every two months, which visits and tests would require Jones to be absent from work. Dr. Lubak further noted that Jones would require a regimen of continuing treatment in the form of medication.

Following the September certification, Jones told C&D of his desire to take FMLA leave on October 1, 2009, for an ultrasound examination, and he was instructed to inform his supervisor if he was going to be absent on October 1. Jones left a voice mail message for his supervisor on the evening of September 30, 2009, informing him that he would not be at work the following day.

Jones's ultrasound appointment was scheduled for one o'clock in the afternoon on October 1 in Crawfordsville, Indiana. On the morning of that day, Jones went to Dr. Lubak's office in Veedersburg, Indiana. Jones did not have a scheduled appointment, nor was he physically examined by Dr. Lubak while at her office. Jones did speak with Dr. Lubak at the front of her office to confirm that she had delivered the ultrasound paperwork to his ultrasound

doctor. While Jones was at the office, Dr. Lubak also authorized a prescription note for his regular prescriptions. In total, the visit lasted from 10:05am until 10:30am.

Jones then traveled to his ultrasound appointment in Crawfordsville, arriving at 12:32pm. He then underwent a multihour ultrasound procedure on his leg.

C&D suspended Jones from work on October 2, 2009, for being a "no call/no show" on October 1. On October 2, Dr. Lubak provided another FMLA certification to C&D (the "October certification"). This certification provided that Jones suffered from leg pain and anxiety, which required treatment every two months.

On October 7, C&D notified Jones that it had assessed a one-half attendance point against him because it had determined that, "at most, [Jones] only needed a half a day off for [his] medical appointment" and "the other half was for personal business." This one-half point assessment resulted in Jones accruing three attendance points in a four-month period, and his employment with C&D was terminated.

Jones then filed the instant action, alleging that by assessing one-half point for his absence on the morning of October 1, C&D penalized him in violation of the Family and Medical Leave Act.

### III. DISCUSSION

The Family and Medical Leave Act ("FMLA") requires covered employers to grant job-protected leave to eligible employees for qualifying reasons. 29 U.S.C. § 2612. In this case, Jones alleges that C&D interfered with his FMLA rights when it assessed one-half point against him for his absence on the morning of October 1. To prevail on an FMLA interference claim, an employee must demonstrate that: (1) he was eligible for FMLA protection; (2) his employer was

covered by the FMLA; (3) he was entitled to FMLA leave; (4) he provided sufficient notice of his intent to take leave; and (5) his employer denied him benefits to which he was entitled. *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009). "When an employee alleges a deprivation of the guarantees of the FMLA, the employee must establish, by a preponderance of the evidence, an entitlement to the disputed leave." *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 908 (7th Cir. 2008).

The parties do not dispute the first two elements of Jones's FMLA claim; they agree that Jones was eligible for FMLA protection and that C&D Technologies is covered by the FMLA. However, the parties disagree regarding the remaining elements.

With regard to the third element of Jones's FMLA claim, C&D argues that Jones's absence from work on the morning of October 1, 2009, did not qualify as FMLA leave and therefore it was entitled to assess Jones one-half an attendance point for that absence. Jones, in turn, argues that his absence was qualified under the FMLA.[1]

The FMLA limits its protection to certain qualifying reasons. One such qualifying reason for leave is "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the employee's job." 29 C.F.R. § 825.112(a)(4). In order to qualify for this kind of leave, an employee must meet two separately defined requirements: first, the employee must suffer from a serious health condition; and second, the health condition must render the employee unable to perform the functions of the employee's job.

---

[1] C&D did not assess any attendance points against Jones for his absence on the afternoon of October 1, so Jones can not establish, nor does he argue, that C&D interfered with his FMLA right to leave on the afternoon of October 1.

A serious health condition is defined as "an illness, injury, impairment or physical or mental condition that involves inpatient care . . . or continuing treatment by a health care provider." 29 C.F.R. § 825.113(a). Continuing treatment includes, for example, "a course of prescription medication." 29 C.F.R. § 825.113(c). Treatment also includes "examinations to determine if a serious health condition exists and evaluations of the condition," but excludes "routine physical examinations," 29 C.F.R. § 825.113(c), and "any activities than can be initiated without a visit to a health care provider," *Darst*, 512 F.3d at 911.

A serious health condition involving continuing treatment by a health care provider includes a chronic condition, defined as one which "(1) requires periodic visits (defined as at least twice a year) for treatment by a health care provider, or by a nurse under direct supervision of a health care provider; (2) [c]ontinues over an extended period of time (including recurring episodes of a single underlying condition); and (3) [m]ay cause episodic rather than a continuing period of incapacity (e.g., asthma, diabetes, epilepsy, etc.)." 29 C.F.R. § 825.115(c). Leave is qualified for periods of incapacity due to a chronic condition, as well as for treatment for such incapacity due to the chronic condition. 29 C.F.R. § 825.115(c).

Absences attributable to incapacity resulting from a chronic condition qualify for leave irrespective of whether the employee received treatment from a health care provider during the absence. 29 C.F.R. § 825.115(f). However, if an employee neither currently suffers from incapacity due to a chronic condition nor undergoes treatment for the incapacity stemming from his chronic condition, his absence from work is not FMLA qualified. *Compare* 29 C.F.R. § 825.115(c) (qualifying leave for a chronic condition, including resulting incapacity and treatment for that incapacity) *with* 29 C.F.R. § 825.115(f) (explaining that absences due to incapacity are

qualified irrespective of whether treatment is received and citing absences due to asthma attacks, severe allergies, and morning sickness as examples).

"An employee who must be absent from work to receive medical treatment for a serious health condition is considered to be unable to perform the essential functions of the position during the absence for treatment." 29 C.F.R. § 825.123(a). Importantly, in such a situation, the treatment renders the employee unable to work. *See Ridings v. Riverside Medical Center*, 537 F.3d 755, 770 (7th Cir. 2008) ("We held [in *Darst*] that because the employee had not demonstrated that he was receiving treatment that rendered him unable to work . . . , he did not demonstrate FMLA entitlement.").

Jones asserts, and C&D does not contest, that Jones suffered from a serious health condition in October 2009; specifically, he suffered from chronic leg pain. Dr. Lubak indicated in her September certification that this leg pain required a regimen of continuing treatment that included "medication." The certification explained that this leg pain began in 1986 and required treatment consisting of two to three occasional tests per year, as well as office visits every two months, which tests and office visits would require Jones to be absent from work. Dr. Lubak also certified that Jones was likely to experience episodes of incapacity two to three times per year.

In addition to suffering from a serious health condition, Jones must be rendered unable to perform the functions of his job in order to be entitled to FMLA leave. Jones has not shown that his absence from work on the morning of October 1 was due to incapacity stemming from his chronic condition; rather, Jones argues that his absence was for treatment. Dr. Lubak's September certification does indicate that Jones would be absent from work because of treatment

7

"every 2 months."[2] If Jones were receiving treatment from a health care provider, he would be considered unable to perform his job during that time and therefore would qualify for FMLA leave. *Compare* 29 C.F.R. § 825.115(c) *with* 29 C.F.R. § 825.115(f) *and* 29 C.F.R. § 825.123(a) (providing that medical treatment renders an employee unable to perform the functions of his job).

Jones contends that traveling to his doctor's office, confirming the delivery of the necessary medical documentation to his ultrasound doctor, and receiving prescription documents constitutes treatment. The Court disagrees.

Jones stresses that the receipt of prescription documents qualifies as treatment because a course of prescription medication constitutes "treatment" under 29 C.F.R. § 825.113(c). While Jones correctly cites the definition of treatment, he misapplies it. Specifically, the fact that an employee has been prescribed a course of prescription medication suffices as "ongoing treatment" for the purpose of determining whether an employee has a "serious health condition," but it does not mean that every action an employee takes with regard to obtaining that medication qualifies as treatment rendering him unable to perform the functions of his job. Exclusions from the definition of "treatment" make this clear: while diagnostic or evaluative visits to a doctor qualify as treatment, routine matters, specifically those not requiring a visit with a physician, do not. For example, in *Darst*, the employee was an alcoholic who had relapsed. 512 F.3d at 905. In the days leading up to his admission to an in-patient alcoholism treatment center, he missed

---

[2] Jones had previously visited his doctor on September 4, 2009, and C&D argues that, as a result, his October 1 visit was outside the FMLA certification because it had been less than one month since Jones's last visit to his doctor. However, recognizing that doctors cannot say with certainty the exact frequency of visits, and given that Dr. Lubak even expressly noted that this was an approximate time frame, the Court is unwilling to find that this doctor's visit was per se outside the FMLA certification based on its timing alone.

work, and sought to qualify those days under the FMLA leave provisions. *Id.* at 906. However, the Seventh Circuit held that the actions he took in the days leading up to his admission–calling his doctor's office, a local hospital, and his insurance company to arrange admission to the hospital–did not constitute evidence of "treatment" as defined in the FMLA. *Id.* at 911-12. The Court noted that the employee had not provided any evidence that he was being examined or evaluated on those days, and the FMLA's definition of treatment specifically excluded "any activities that can be initiated without a visit to a health care provider." *Id.*

Similarly, the actions Jones took–traveling to his doctor's office, confirming transmission of documents, and picking up a prescription note–are not "treatment" under the FMLA. Jones has produced no evidence that his visit was for diagnostic or evaluative purposes, or that it was otherwise necessary for him to personally visit his physician to confirm delivery of documents to his ultrasound doctor or pick up prescription documents. Indeed, the fact that Jones did not have a scheduled appointment that day and met with his doctor in the front of her office, rather than in an examination room, confirms that the opposite is true. The evidence of record therefore demonstrates as a matter of law that Jones did not receive treatment entitling him to FMLA leave on the morning of October 1, 2009.

Therefore, Jones cannot satisfy the third element of his FMLA claim and cannot prevail on his FMLA interference claim.[3]

Two additional arguments made by Jones require brief mention. First, Jones argues that finding in favor of C&D in this case equates with finding that employers have the "unfettered

---

[3] Because the Court holds that Jones did not receive treatment on the morning of October 1, 2009, it need not consider the parties' arguments regarding the remaining elements of Jones's FMLA claim.

discretion" to determine the length of employees' FMLA leave. He then lists a parade of horribles likely to occur if the Court were to so hold.[4] Yet the framework of the FMLA goes far in preventing Jones's nightmares from coming to fruition, for the FMLA entrusts the determination of the manner, circumstances, and duration of FMLA leave with the employee's physician by way of an FMLA certification.[5] If, as Jones fears, an employer were to assess a penalty in spite of a doctor's certification, the FMLA civil action provision is well suited to remedy this violation of the employee's rights. *See* 29 U.S.C. § 2617. As Jones correctly recognizes, "there is nothing in the FMLA or its governing regulations that suggests an employer is entitled to ignore the [FMLA] framework and/or unilaterally modify the leave requested by the employee and supported by a certification from their physician." But where, as here, the employee takes leave for an non-qualifying reason that is not supported by the certification from his physician,[6] there is nothing in the FMLA that prevents an employer from taking the action dictated in its attendance policy.[7]

---

[4] Jones worries that employers will "penalize an employee for a partial-day absence because the employer believes the employee could have found a way to work his or her shift around an FMLA-qualifying absence," or because "the employer believe[s] the person should have returned to work more quickly following surgery than the employee and their doctor certified."

[5] An employer is not completely at the mercy of an employee's treatment decisions, as employees requesting foreseeable intermittent leave for planned medical treatments are admonished to "make a reasonable effort to schedule the treatment so as not to disrupt unduly the operations of the employer." 29 U.S.C. § 2612. At the same time, scheduling treatment is "subject to the approval of the health care provider of the employee." *Id*.

[6] Dr. Lubak certified that Jones would be absent for *treatment* every two months. Because the Court holds that Jones's transactions on the morning of October 1 do not constitute treatment as defined in the FMLA, his actions are not covered by Dr. Lubak's certification.

[7] Jones also worries that employers will penalize an employee because "the employee did not return to work for the last fifteen minutes of their shift . . . after they took their ailing child to a medical appointment," or because the employer believes that an employee who had undergone chemotherapy "could have actually 'sucked it up' and worked some or all of his or her shift that day." He further worries that an employer could prevent an employee from leaving work early enough to allow the employee to arrive at his scheduled appointment time. The Court can

10

Jones also argues that, even if the evidence does not support his request for a full day of leave on October 1, 2009, he is nevertheless entitled to summary judgment because the Defendant did not follow either of two paths for investigating an employee's request for leave. 29 C.F.R. § 825.305(c) (setting forth the notification and cure period employers must provide to their employees when FMLA certification paperwork is incomplete or insufficient); 29 C.F.R. § 825.307(a)-(c) (setting forth procedures employers should use when requesting additional information about an FMLA leave request). Yet whether the Defendant followed the proper paths is irrelevant unless the employee would have otherwise been entitled to FMLA leave, as the FMLA provides no remedy for a possible violation unless the action interfered with, restrained, or denied the employee's exercise of his rights. *Darst*, 512 F.3d at 911; *see also* 29 U.S.C. § 2615(a)(1). Because Jones was not entitled to FMLA leave on the morning of October 1, 2009, any steps Defendants took, or failed to take, in questioning his FMLA certification are not actionable under the FMLA.

---

envision these and other cases in which it would be a close question whether the number of hours taken by the Plaintiff was reasonably necessary for a particular treatment or illness and therefore qualified by the FMLA. However, that is not this case. Jones does not dispute the amount of time for which his afternoon FMLA absence was qualified; rather, he argues that his morning absence was independently qualified because his action during the morning constituted treatment in itself.

## IV. CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment is **GRANTED**, and the Plaintiff's Motion for Summary Judgment is accordingly **DENIED.**

SO ORDERED:  09/27/2011

*William T Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.